Catron, J.
delivered the opinion of the court.
The simple question presented is, was the mortgage deed to the Banks void as against the purchaser at execution sale? This depends upon our register. acts. How they stood at the time this deed was executed will form the only ground of inquiry, for such has been the want of care and disregard of all system upon the subject of registering deeds, that it is very troublesome to examine the successive provisions, presenting a variety of discrepencies between the respective acts, that is truly lamentable, which renders it extremely doubtful, taking the .whole legislation together, whether it has done most harm or good. The statutes were made to simplify the landed titles of a plain agricultural people, so that every fanner might know from *387 the records, when he was buying lands, in whom the title rested: or, if a man was trusted by his neighbour, the records would show the property, upon the faith of which the credit was extended. This was the object, and a very desirable one it was. Has our legislature attained it? Almost any thing else has been the result of these frequent changes. Where is the plain man, nay, where is the experienced and eminent lawyer, who can tell whether a deed duly of record is, or can be over reached by an older one standing unregistered ? To prove' this, let us examine two of our. late acts. That of 1819, ch. 47, provides deeds shall be registered; those then executed within twelve months; such as should be thereafter executed, within twelve months after execution; those who failed might have their deeds registered at any time after the expiration of twelve months; in which case, it should only operate and take effect from the time the deed was registered. Here was a plain and simple provision, easily understood, which it is to be lamented the legislature ever touched.
The act of 1827, ch. 59, authorises every deed theretofore or thereafter to be executed to be registered, at any time, and that such registration should be as good and valid inlaw, as if registered in the time prescribed by law, meaning, of course,by the previous existing laws; provided the registration should not effect the rights of creditors or subsequent purchasers without notice of the deed.
Here is a statute, which in its enacting clause, cuts up registration by the root. For all the purposes of the owner, an unregistered deed is just as good as a registered one, and it would be a useless expense for any man to put his title on record. What is the effect of the proviso? This is uncertain, and would require considerable legal skill to ascertain it; but one thing is certain, that it is likely to produce many law suits and much perjury, and be a great drawback upon confidence in the landed titles of the country. With all possible respect to the legislature I say this, still it is not the less true. The policy of the registry acts is to protect the community against frauds. Does the proviso do this as to the creditor? A owns a tract *388 of land worth five thousand dollars, he mortgages, or sells an(j conveyS j(; to B far its value; the latter is some man at a distance, or does not see proper to disclose it, the land in the forest, or occupied by a tenant who neither knows or cares who *s his landlord, the common case in the country; A is trusted by every one upon the faith of his estate, to its amount, perhaps more, is sued for the debts, after the various delays of the law, judgments are obtained, but just before, the purchaser steps forward and registers his deed, perhaps four or five years old; the bubble is burst, the debtor was a bankrupt from the beginning, and the community cheated. Had he been compelled to register within the year, the imposition could not have been practised. Suppose a trader goes to Philadelphia or New Orleans, and mortgages his lands and slaves for debt; they are ample; returns to Tennessee, holds the possession, which the deed provides he may do, extends his credit to the full amount of the property, then the mortgage is registered, or not registered if you please, and the property swept away; what becomes of the home creditors? They are cheated,' perhaps ruined. Let us not be told these are extreme cases: They are of the most common occurrence in every country, presenting the substantial features of most frauds of the kind. The statute has opened the door to almost every imposition, against which the registry acts for a century and more, have been attempting to keep it carefully closed.
How does the matter stand as to the bona fide purchaser, without notice? A sells his land to B, and gives him a deed, say in North Carolina, the land lying in the Western District; then A sells to C, gives him a title bond, gets his money presently, when B comes forwardandregisters his deed: where is the second purchaser? Cheated out of his money; because, until he gets a deed, he is not a purchaser within the act. Suppose B does not even see proper to register his deed, but only gives notice thereof to C, the effect is the s&me. These are minor afflictions upon the country when compared to the majority of cases that must arise under the last clause of the proviso. A gets his deed and does not register, then B purchases and gets his deed; A sues B, *389 and sets about proving notice upon him of his previous deed or purchase. Every experienced man will admit, that this is almost the worst conceivable case, for throwing open the flood gates of perjury. The predicted conséquen-ces are as inevitable, as that light accompanies heát, and are but a very few of the evils the act is calculated to let in. How easily could a deed be ante dated or forged, and be proven in a foreign country by pretended witnesses, or even in our own courts, and registered* to the distruction of creditors and purchasers in fact, who had neither judgments or deeds. A title bond would afford slight protection against the frauds of the vendor.
All such misfortunes would be pretty certainly escaped from, if.it were necessary to register within a year: if a forgery of the deed and probate have been committed, the transaction must have been of recent date, and can be cash ly proven; but let the pretended grantee lie by ten years or more, until the witnesses are dead, and then come forward and register, destroy the original, and offer a copy in evidence, who can prove the deed to have been forged? In a mojority of cases it would be impossible; to thepreterided vendor, his heirs, and to purchasers not occupying their lands, the statute of limitations would afford no protection.
These comments are made upon the act of 1827, only by way of example, because it makes a permanent provision, that all deeds may be proven and registered at any time, and shall be good and effectual from their date; it has done nothing more in effect than a dozen or twenty laws in our statute book had before done; let in every instrument unregistered: Such laws have almost as uniformly been passed every successive session, as the appropriation bills: What was the consequence? That men gave themselves no concern to comply with the registry acts, taking it for granted the next legislature would give further time. By this means the main policy of the act of 1715, ch. 34, has been defeated, and by which, successive acts giving further time, many, not to say most of the evils, that act was intended to prevent, have been let in, to wit: fraudulent, ante dated and forged deeds, to an extent unknown to any othefcoun- *390 try where the government is a thousand years old, much less in one of small population, only of thirty-one years standing. The writer knows of record evidence of title, fair upon its face, where the deeds and probates have been ^or§etl> f°r Perhaps two hundred thousand acres of land; and that they are forgeries, is not now a matter of doubt or controversy. These papers were, in almost every instance, kolden up a great length of time, until most of the witnesses who could prove the forgeries were dead, and then registered, under some law giving further time, and which provides that deeds thereafter registered.should have the same ■force and effect as if recorded within the time prescribed by law. Such laws have almost uniformly had a retrospective operation, destructive of the rights of the honest and industrious part of the community, whom they were intended to protect. This grievance, the act of 1819, ch. 4 7, proposed to remedy, for the attainment of which, to a great extent, it certainly made a wise and salutary provision, in requiring deeds to be registered within one year after their execution; and in case of failure, that they should only operate and take effect from the time they were registered. If a forgery or fraud had been committed, the transaction was so recent that those interested could easily detect it: if not entered of record within the year, it could not by a retrospective effect overreach intermediate purchasers, or creditors who had trusted a man upon the faith of his estate.
We have been referred to the policy of the English, Scotch, French, and many of .the American states, upon the subject of registry of titles, which goes strongly to confirm the wisdom of the act of 1819, but which is light as air, when compared with our previous misfortunes and their necessities. Notwithstanding all this, the act must be construed according to the terms employed. If the provisions are plain, we cannot add to or alter them; to do so would be legislating; so this court decided at the last term upon the most solemn consideration in Hickman’s lessee. Gathierand Frost, in relation to the act of limitations, and in equity, in the cause of M’Clure v. Patton, in reference to the statute *391 of frauds, where the court declared that the statute required written evidence of the contract for the sale of lands, and no exception could be made to it; neither payment of the purchase money, taking possession of the property, nor making valuable improvements thereon, nor all these combined, could be received as a substitute for the writing required by the statute.
Judge Haywood’s opinion, written for this cause, and delivered in the chancery court in Coats v. Benoit, is referred to as holding a different doctrine. This is true: but it is equally so, that Judge Haywood was of opinion that equitable exceptions could be made by the courts, both of law and equity, to the provisions of the statutes of limitation and frauds; to this effect he delivered a very able opinion in Hickman v. Gaither and Frost; and on the construction of the statute of frauds so held in Cox’s heirs v. Cox and Talbert; (Peck’s R. 443;) although the question did not there fairly present itself, still we all well know such was clearly his opinion. The balance of the court however, have thought otherwise, and settled the law beyond controversy, “ that the courts have no powers to introduce exceptions to a statute, to cover particular cases of hardship, where the legislature has made none.” By this principle, must the act of 1819 be tested.
It was passed November 23d, 1819; ihe time for registering this deed expired the 23d of November, 1820, by the terms of the act. In April, 1821, the plaintiff purchased; having acquired a vested right, no subsequent legislation could divest it, neither directly nor indirectly, by overreaching him with a deed void as against him, when he acquired his title, which deed a subsequent act declared valid from its date, and the registration effectual to pass the estate. Such is the act of 1821, ch. 57, precisely covering a case like the present. The plaintiff clearly had the better right previous to the passage of the act of 1821, ch. 57; the first section of that act declares the deed of the banks the superior title, and differs nothing in effect from an arbitrary law of an absolute government, taking from A his property and giving it to B, because it attempts to give the deed *392 of the banks a retrospective operation, from its date, accord-jn(;enti0ij9 which would overreach the title of the plaintiff; so far, therefore, as his rights are affected, the statute is retrospective, unconstitutional and void, and therefore must be disregarded in the. decision of the cause. See 11 Mass. R, 400.
The case being wholly governed by the act of 1819, when did the mortgage deed of the banks operate and take effect? On the day it was registered, which was the day the sheriff sold the property. The deed then has the same force that it would have had, had it been executed by Stump and Cox on that day, when the land was fixed by the creditor’s judgment andthe levy ofhis execution; having the previous lien, he was entitled to the first satisfaction. But it is contended, the plaintiff had notice of the deed before he purchased, was guilty of fraud in so doing after notice, and therefore his right acquired by the purchase must be postponed to that of the banks under the deed.
The statute has incumbered the purchaser with no such conditions, nor made any provision prejudicial to those purchasing with notice, much less to the prejudice of creditors, to whom the doctrine of notice cannot in the nature of things be made to apply; no evidence of notice dehors the statute can be received, because the notice prescribed is registration of the deed: It follows, the legislature made no exception that will protect the defendants, and the court Can make none.